IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADRIAN JACOBO,

Petitioner, No. CIV S-04-1876 LKK GGH P

vs.

MATTHEW C. KRAMER, et al.,

Respondent. FINDINGS AND RECOMMENDATIONS

_________________________________/

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2000 conviction for robbery with use of a firearm. Petitioner raises the following claims: 1) ineffective assistance of counsel based on petitioner's incompetency when he pled guilty; 2) ineffective assistance of counsel based on counsel's waiver of petitioner's right to a preliminary hearing.

Pending before the court is respondent's December 29, 2004, motion to dismiss on grounds that this action is barred by the statute of limitations. After carefully reviewing the record, the court recommends that respondent's motion be granted.

/////

/////

/////

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act (AEDPA) was enacted. AEDPA amended 28 U.S.C. § 2244(d)(1) so that it now provides,

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Petitioner did not file a petition for review. Therefore, petitioner's conviction became final on December 30, 2000, i.e. thirty days after the California Court of Appeal denied his appeal. See Respondent's Motion, Exhibit B; California Rule of Court 24(b)(1). Petitioner had one year from that date to file a timely federal habeas petition, i.e. until December 30, 2001. Unless excused by statutory or equitable tolling, the instant petition filed September 9, 2004, is not timely.

Section 2244(d)(2) provides that the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation. Petitioner filed his first state habeas petition on May 29, 2003. Respondent's Motion, Exhibit C. Once the statute has run, a collateral action cannot revive it. Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001). Accordingly, § 2244(d)(2) is not applicable.

/////

In Calderon v. U.S. District Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled on other grounds, Calderon v. U.S. District Court (Kelly), 163 F.3d 530 (9th Cir. 1998), abrogated on other grounds, Woodford v. Garceau, ____U.S.____, 123 S. Ct. 1398 (March 25, 2003), the Ninth Circuit found that the statute of limitations could be equitably tolled if extraordinary circumstances beyond a prisoner's control made it impossible to file the petition on time. Equitable tolling is "unavailable in most cases." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exception swallow the rule.'" Miranda v. Castro, 292 F.3d 1063, 1066 (9th Cir. 1998). Petitioner has the burden of demonstrating that equitable tolling is appropriate. Id. at 1065.

In his opposition filed January 14, 2005, petitioner argues that due to his mental incompetence he was unable to collect the evidence (exhibits 1, 5, 6, and 7 attached to the petition) needed to submit a state habeas petition until May 2003. The background to this claim is as follows.

On direct appeal in state court, petitioner's counsel filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979). Petition, Exhibit 10, p. 2. According to the state appellate opinion dated November 2000, petitioner himself filed a two page supplemental brief arguing that his plea was coerced and that his trial counsel had a conflict of interest. Id., p. 2. As to this claim the California Court of Appeal stated,

> He also states that if given the opportunity, he could prove such claims. Unfortunately for defendant, the record contains no facts which support his arguments. Indeed, when asked whether he was pressured into accepting the plea agreement, defendant answered "No" and further informed the trial court that he had "fully discussed" the case with his attorney and was entering his plea "freely and voluntarily." As a result, this court is in no position to afford defendant any relief. (In re Alvernaz (1992) 2 Cal.4th 924, 934.) If in fact defendant has at his disposal evidence which supports the claim asserted in his supplemental brief, his recourse is to file a petition for habeas corpus in the trial court.

Id., pp. 2-3.

/////

In his own declaration attached to his opposition, petitioner states that in December 2000 he asked his mother, Sandra Winters, if she would obtain the documents necessary to submit his state habeas petition. In her declaration attached to the opposition, Ms. Winters states that she was unable to obtain the documents until May 2003 because she was working full time, raising a child and caring for her terminally ill husband. In his opposition, petitioner identifies this evidence as exhibits 1, 5, 6, and 7 attached to the federal petition.

Petitioner contends that inmate Derrick Lee Billips prepared his state and federal habeas petitions. Petition, Exhibit 11 (declaration of inmate Billips). Mr. Billips states that he has helped petitioner through the "appeal process" due to petitioner's "mental and emotional capacity." Billips Decl., attached to opposition.

Petitioner has presented conflicting theories regarding why he could not file a timely federal habeas petition. Petitioner suggests that his incompetence prevented him from timely filing. Petitioner alternatively suggests that his inability to have his mother obtain evidence prevented him from timely filing his federal petition.

For the following reasons, the court finds that a claim for equitable tolling based only on petitioner's inability to obtain his evidence until 2003 is not well supported because this evidence (exhibits 1, 5, 6, and 7) was not necessary to support his petitions. In other words, petitioner could have filed his habeas petitions without this evidence.

In claim 1, petitioner argues that his counsel let him plead guilty despite having knowledge of his serious mental problems which rendered him incompetent. Petitioner claims that he suffered from depression. Petitioner appears to argue that his depression was exacerbated during pretrial proceedings because during this time, his grandfather suffered two strokes and his father suffered a recurrence of testicular cancer. Exhibit 6 is a letter dated April 22, 2003, by Dr. Shrum stating that petitioner's father had undergone extensive surgical and chemotherapeutic treatment for testicular cancer. Dr. Shrum states that on March 17, 2000, it was determined that the cancer had returned. Dr. Shrum also states that petitioner's father recently passed away and

that it was his understanding that the recurrence of the disease had an impact on petitioner. Exhibit 7 is a letter from Dr. Ito stating that petitioner's grandfather suffered two strokes on April 27, 2000, and April 22, 2000.

Petitioner himself was aware of the medical conditions of his grandfather and father. Therefore, he did not require the letters from Drs. Shrum and Ito in order to file his state habeas petitions.[1]

Exhibit 1 attached to the petition is the August 7, 2002, declaration of Elizabeth Cole, a Marriage, Family and Child Therapist. Ms. Cole states that in 1985 and 1989 she consulted with petitioner's mother and his sister and, on occasion, petitioner. She states that petitioner's mother left his father. During visits in 1982-1984, petitioner's father sexually abused petitioner's sister. Petitioner's knowledge of the abuse caused him to suffer depression. Also attached as exhibit 1 is another declaration by Ms. Cole dated March 24, 2003. In this declaration, Ms. Cole states that petitioner did not receive the crucial treatment he needed as a boy.

Ms. Cole last treated petitioner in 1989–11 years before his conviction. While petitioner may have suffered from depression, Ms. Cole's memorandums do not support a claim that petitioner was not competent during pretrial proceedings and when he pled guilty. A claim for equitable tolling cannot be based on an inability to obtain immaterial evidence.

In claim 2, petitioner contends that counsel waived his right to a preliminary hearing despite knowing that petitioner was not competent. In support of this claim petitioner claims that during the interrogation after his arrest, he informed the detective that he had a history of hypoglycemia and that he was not feeling well. In his declaration attached to the petition, petitioner claims that during the interrogation he asked the detective for some chocolate milk. Once he drank the milk, he came to his senses and asked for an attorney. Exhibit 5 is a

---

[1] Although the letters may have been helpful to the point made, statutes of limitation will not be tolled for all periods necessary to obtain helpful evidence.

memorandum dated May 7, 2003, by John Jensen, PAR, stating that petitioner has a history of episodes of hypoglycemia.

Petitioner did not need the memorandum by Mr. Jensen to support claim 2. Petitioner was aware of his own medical condition and how it affected him during the interrogation, as reflected in his own declaration. See footnote 1.

Petitioner did not require exhibits 1, 5, 6, and 7 to file his state habeas petitions. Accordingly, the court finds that petitioner is not entitled to equitable tolling based only on his inability to obtain these exhibits.

The court now considers whether petitioner's incompetence prevented him from filing a timely petition. In Laws v. LaMarque, 351 F.3d 919 (9th Cir. 2003), the petitioner alleged mental incompetency in a verified pleading in support of his claim for equitable tolling. 351 F.3d at 923-924. The Ninth Circuit found this unrebutted claim, in light of the petitioner's history of mental illness, warranted discovery or expansion of the record. Id. The Ninth Circuit noted that,

> Of course, a petitioner's statement, even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced. The record in this case is patently inadequate, however, to allow us or another court to evaluate the strength of [petitioner's] claim. In 1993 it took three psychiatrists, two psychologists, and a judge to decide [petitioner's] incompetence at the time of the inquiry.

Id. at 924.

In his verified declaration attached to the opposition, petitioner states that he is not mentally competent. Petitioner's jailhouse lawyer also states that he assisted petitioner due to his "mental and emotional capacity." Attached as exhibit 3 to the petition are some of petitioner's medical records from the California Department of Corrections following his conviction. A record dated May 18, 2000, states that petitioner suffered from depression and that in 1995 he attempted suicide by overdosing on aspirin after he broke-up with his girlfriend. Another record dated September 1, 2000, diagnosed petitioner as suffering from recurrent major depression. The

latest medical record submitted is dated October 23, 2000. This entry states that petitioner states that he had been very "down" but thought he was improving.

On April 25, 2005, the court ordered the parties to file further briefing regarding petitioner's competence. On August 11, 2005, respondent filed further briefing and lodged petitioner's mental health records. On September 6, 2005, petitioner filed a response.

Respondent argues that petitioner's mental health records do not indicate that he was incompetent during the one year time period during which the limitations period ran, i.e. from December 30, 2000, to December 30, 2001. The December 19, 2000, entry in petitioner's records by psychiatric social worker Crenshaw states that petitioner was anxious and concerned about Hispanic inmates and the pressure they put on him. Crenshaw described petitioner's affect as blunted but also wrote that he was pleasant and cooperative. The court cannot read the word Crenshaw used to describe petitioner's mood.

The January 16, 2001, entry in petitioner's records by Crenshaw states that petitioner was doing better and he was much less anxious. The entry states that petitioner was dealing better with his relationship with the other Hispanics on the yard. Crenshaw stated that his impression was that petitioner had stable dysthymia. Diagnostic and Statistical Manual of Mental Disorders, 4th ed., p. 345 (1994). Individuals with this disorder describe their mood as sad or "down in the dumps." Id.

Petitioner's records indicate that he did not appear for appointments with Crenshaw on March 20, 1001, and April 12, 2001. The entry from April 26, 2001, by psychiatric social worker Gouaux states that petitioner stated that he was "doing good." Gouaux described petitioner's mood and affect as within normal limits. The entry states that petitioner was stable and seemed to have underlying depression that had been within him since his early use when he was physically abused. The entry also states that petitioner was off his meds.

The entry from July 12, 2001, states that petitioner did not appear for his appointment. The entry from August 19, 2001, by Crenshaw states that petitioner told him that

he was starting to learn to cope with his feelings. The entry states that petitioner had dysthymia. Dysthymia disorder is a chronically depressed mood that occurs for most of the day.

Entries from November 14, 2001, and November 26, 2001, state that petitioner did not appear at psychiatric appointments. The entry from February 21, 2002, states that petitioner did not appear for his appointment because he was working.

The March 4, 2002, entry states that petitioner reported that he was programming well. This entry also states that petitioner stated he might be going to court to appeal his case and that he was worried on some levels about this because he did not know how he would do on the streets based on his prison background. The entry from May 31, 2002, states that petitioner reported that he was not feeling depressed and he had not felt that way in a long time. The entry stated that no axis I disorder was noted. A document entitled "Interdisciplinary Treatment Team Review" dated June 13, 2002, states that petitioner initially had a depressed mood upon his incarceration in May 2000 but it was now resolved.

While depression is a mental illness, the record does not indicate that petitioner's depression rendered him unable to file a timely petition. See Laws, 351 F.3d at 923 (equitable tolling justified if mental incompetence in fact caused petitioner to fail to meet AEDPA deadline). The records described above indicate that petitioner's depression was not so serious that it caused him to be incompetent to the point that he could not meet the AEDPA deadlines. Accordingly, the court finds that petitioner is not entitled to equitable tolling based on mental incompetency.

For the reasons discussed above, the court finds that respondent's motion to dismiss should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss filed December 29, 2004, be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/1/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
jac1876.157